**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 29 2013, 9:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL R. FISHER**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MADELYN SMITH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  49A02-1205-CR-408 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT, CRIMINAL DIVISION 3
The Honorable Sheila A. Carlisle, Judge
Cause No. 49G03-1102-FB-12274

**January 29, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, appellant-defendant Madelyn Smith requested to care for her eighteen-month-old granddaughter and the child's six-month-old sister for a few days. The mother of the two small children had a close relationship with Smith and agreed to allow both children to spend several days with Smith, even though the six-month-old was not Smith's grandchild.

The children were left in Smith's care on a Wednesday and between that time and when they were picked up on Saturday, the six-month-old baby suffered an abrasion on her ear, a torn lip, bruises on her abdomen and face, multiple fractures to her legs, a bruised liver, and multiple lesions to the bottoms of her feet. Smith admitted to abusing the baby by bending her forwards and backwards and throwing and swinging her when she would not eat her food.

Smith was convicted of class B felony neglect of a dependent, two counts of class B felony battery, and three counts of class D felony battery. Smith was sentenced to an executed ten-year sentence, which she now appeals. More particularly, Smith argues that the trial court erred by considering the fact that she was in a position of trust, insofar as that is an element of the offense of neglect of a dependent. Additionally, Smith contends that the trial court erred by imposing consecutive sentences when it concluded that the aggravating factors only slightly outweighed the mitigating factors.

Smith further argues that her sentence is inappropriate in light of the nature of the offenses and her character. Specifically, Smith points out that the incident was the

product of physical and psychological ailments such as fibromyalgia and a recent hysterectomy.  Finding no error, we affirm the decision of the trial court.

FACTS

Alexis Berling has two daughters, C.B., born on June 12, 2009, and A.B., born on August 22, 2010.  Smith is C.B.'s paternal grandmother, and someone whom Alexis considered one of her "best friends" and a "second mom."  Tr. p. 53.  Alexis allowed her daughters to stay with Smith on numerous occasions at Smith's request.  Alexis described A.B. as a "happy baby."  Id. at 57-58.

During the afternoon of Wednesday, February 16, 2011, Smith called Alexis and asked to have C.B. and A.B. stay with her for a few nights.  Alexis brought C.B. and A.B. over to Smith's house around 9:00 p.m.  When Alexis left the girls in Smith's care, A.B. did not have any injuries.

On Thursday and Friday, Alexis called Smith to check on the girls; Smith told Alexis that everything was fine.  On Friday, Alexis gave Smith permission to keep the girls until Saturday.

On Saturday, Alexis called Smith, and C.B. answered the phone crying and screaming, "Momma."  Tr. p. 65.  As Alexis was trying to calm down C.B., Smith took the phone and told Alexis that "C.B. had got a whooping for hitting her little sister in the head with a bottle of lotion," and that A.B. got "a little bruise on her head."  Id. at 66.  Smith also told Alexis that C.B. had "marked on the bottoms of [A.B.'s] feet with an ink pen."  Id.  Smith told Alexis that "everything was all right."  Id. at 66-67.  Alexis, who

3

could not drive, asked her grandmother, Gayle Engle, to pick up the girls and meet them at a Kroger Grocery Store.

When Engle arrived at Smith's house around 6:00 p.m., Smith was "surprised" that it was Engle, rather than Alexis, and immediately started explaining to Engle that C.B. had hit A.B. in the head with a bottle. Tr. p. 100-01. Engle picked up A.B., noticed bruises on her forehead, and "right away" realized something was wrong. Id. at 102. Smith, who appeared "nervous" to Engle, quickly took A.B. away. Id. at 104. Engle left to get something from her vehicle and called Alexis's mother and informed her that A.B. needed to be taken to the emergency room.

Alexis's sister, Rayna Engle, drove Alexis to Kroger, and as they were entering the parking lot, Smith called Alexis and asked why Engle had picked up A.B. and why they were going to the emergency room. Alexis was alarmed when she saw A.B., observing that the baby looked "real sad," and "like she was there, but she wasn't there." Tr. p. 70. A.B. was also vomiting profusely. Alexis noticed "bruises," "knots," and "dents" on A.B.'s head. Id. at 71. When Alexis picked up A.B., she would not cry any tears; instead, she just moaned and groaned. A.B. was rushed to the emergency room.

Rayna drove to Smith's house to pick up C.B., and Smith repeated her story to Rayna that C.B. had hit A.B. in the head with a lotion bottle. Smith also stated that C.B. had pulled her younger sister off of the couch. Smith then began to cry what Rayna observed to be "a fake movie cry." Tr. p. 124. Rayna took C.B. back to Alexis's residence.

A medical examination of A.B. indicated that A.B. suffered an abrasion on her ear, a torn lip, bruises on her abdomen and face, multiple fractures to her legs, a bruised liver, and multiple lesions to the bottoms of her feet. A.B. was in the hospital for four days and three nights. The doctors sent A.B. home with splints on her legs, and she received liquid hydrocodone for two months.

Detective Christopher Lawrence of the Indianapolis Metropolitan Police Department (IMPD) spoke with Smith at her residence on February 21, 2011. Smith told Detective Lawrence that C.B. had struck A.B. in the head with a bottle of lotion and had drawn on her feet with a pen. Smith consented to a search and surrendered the bottle and the pen.

The following day, Detective Lawrence returned to Smith's residence and brought her to his office to make a statement. Smith signed a Miranda[1] waiver and gave a recorded interview. Smith confessed that she had hurt the baby and that she had "bent," "hurt," and "abused" A.B. the previous Friday. Ex. 17. Smith stated that she had become frustrated with A.B. when she would not eat her food. Smith admitted that she held A.B. by her legs, "bent her forwards and backwards," and "threw" and "swung" her "hard." Id. Smith demonstrated how high and hard she threw and swung A.B. over her shoulder and onto her bed. Smith confessed that she injured A.B.'s mouth, legs, stomach, and ear.

On February 25, 2011, the State charged Smith with Count I, neglect of a dependent, a class B felony; Counts II to VI, battery, a class B felony; and Counts VII to

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

XI, battery, a class D felony. On August 22, 2011, the State amended Count I, dismissed Counts II to XI and added Counts XII and XIII, battery, a class B felony; and Counts XIV to XVI, battery, a class D felony.

At the one-day trial on March 19, 2012, Dr. Tara Harris testified that it was her conclusion that A.B.'s "injuries were consistent with severe physical abuse." Tr. p. 203. The jury found Smith guilty on Count I and Counts XII to XVI.

A sentencing hearing was held on April 27, 2012, and the trial court entered a judgment of conviction for neglect of a dependent as a class D felony rather than a class B felony based on what it perceived to be double jeopardy issues. Additionally, the trial court entered a judgment of conviction on four counts of battery, one as a class B felony and the remaining as class D felonies. Rayna and Engle presented letters stating that A.B., who was once a happy baby, now wakes up at night screaming and is afraid of other people.

The trial court found the aggravating factors to be that Smith violated a position of trust, she abused A.B. in front of another child, and the nature and circumstances of the offenses, including A.B.'s tender age, her multiple injuries, and the length of time she suffered. In mitigation, the court recognized that Smith suffered from medical and emotional conditions and that she did not have any prior felony convictions.

The trial court concluded that the aggravating circumstances outweighed the mitigating circumstances and sentenced Smith to ten years for class B felony battery and to two years on the remaining Counts with Count I and Count XII to be served

6

consecutively to each other.  The trial court suspended two years to probation, for a total executed sentence of ten years.  Smith now appeals.

## DISCUSSION AND DECISION

Smith challenges her sentence, attacking it in two related but separate ways.  First, Smith claims that the trial court erred by making Smith's position of trust an aggravating factor when this is an element of the offense of neglect of a dependent.  Likewise, Smith argues that the trial court erred by imposing consecutive sentences "when it did not cite a specific aggravating factor to support it and found that aggravating circumstances only slightly outweighed mitigating circumstances."  Appellant's Br. p. 5.  Smith next argues that her ten-year executed sentence followed by two years in community corrections in inappropriate in light of the nature of the offenses and her character.

## I. Abuse of Discretion

Sentencing is a discretionary function of the trial court that warrants considerable deference on appeal.  Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). A court may impose any sentence authorized by statute regardless of the presence or absence of mitigating or aggravating circumstances.  Ind. Code § 35-38-1-7.1(d).

When a trial court imposes a sentence, it must enter a statement which includes its reasonably detailed reasons for imposing that particular sentence.  Sanchez v. State, 938 N.E.2d 720, 722 (Ind. 2010).  On appeal, the court reviews those reasons; however, under the current advisory scheme, our Supreme Court has consistently stated that "[t]he

7

relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse." Cardwell, 895 N.E.2d at 1223.

In Robinson v. State, Robinson argued that the trial court had improperly considered the fact that she was in a position of having the care and custody of the victim as an aggravating factor because that fact is an element of the crime of neglect of a dependent. 894 N.E.2d 1038, 1042 (Ind. Ct. App. 2008). However, the Robinson Court determined that the trial court went beyond merely relying upon an element of the crime to consider the particularized circumstances of the crime, which included the fact that Robinson was in a position of care over a completely defenseless and vulnerable newborn. Id. at 1043.

Similarly, in this case, Smith was caring for a six-month-old baby who could not speak or even sit up. The trial court emphasized that beyond that, Smith violated a position of trust that she had with the child's mother, Alexis, who viewed Smith as a "second mom," tr. p. 53, and trusted Smith to care for A.B. Consequently, the instant case is analogous to Robinson, and the trial court did not err by considering Smith's position of trust as an aggravating factor.

Notwithstanding the above, Smith also contends that the trial court erred by ordering consecutive sentences when it made "the specific finding that aggravating factors only 'slightly' outweigh the mitigating" factors. Appellant's Br. p. 11 (quoting tr. p. 322). Smith argues that her case is analogous to Marcum v. State, 725 N.E.2d 852 (Ind. 2000). We cannot agree. In Marcum, our Supreme Court opined that "because the

8

trial court found the aggravating and mitigating circumstances to be in balance, there is no basis on which to impose consecutive terms." Id. at 864.

Smith's reliance on Marcum is misplaced for another reason. Marcum was decided under the presumptive sentencing scheme. Under this system, the trial court had to find at least one aggravating factor to impose consecutive sentences. Id. In 2005, the General Assembly adopted an advisory sentencing scheme. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007). Under the advisory system, at trial court "no longer has any obligation to 'weigh' aggravating and mitigating factors against each other when imposing a sentence." Id. at 491. The trial court may impose any sentence authorized by statute once it has entered a sentencing statement.[2] Id.

Nevertheless, this does not mean that criminal defendants are without recourse to challenge sentences which they believe are excessive. Indeed, the Indiana Constitution provides such a mechanism, and Smith utilizes it to dispute the appropriateness of her sentence.

Inappropriate Sentence

Smith maintains that her ten-year executed sentence is inappropriate in light of the nature of the offenses and her character and requests that this Court revise it "to one that is consistent with who she is and what she has done." Appellant's Br. p. 15.

---

[2] For this reason, in some instances, opinions that have been decided since Anglemyer may be preferable to those that were decided before.

Article 7, Section 4 of the Indiana Constitution grants this Court the authority to review and revise a trial court's sentence in all criminal cases. This authority is implemented through Indiana Appellate Rule 7(B), which provides that we will revise a sentence if, after due consideration of the trial court's decision, we are convinced that the sentence is inappropriate in light of the nature of the offenses and the character of the offender. When reviewing a sentence under Rule 7(B), our purpose is to "leaven the outliers, and identify some guiding principles for the trial courts . . . but not to achieve a perceived 'correct' result in each case." Cardwell, 895 N.E.2d at 1225.

As for the nature of the offenses, Alexis, a young mother of two, left her children in the care of Smith, who is a mother herself and someone whom Alexis considered a "second mom." Tr. p. 53. Smith betrayed this relationship in almost the worst way a mother could imagine when she "beat," "bent," "threw," "swung," and "abused" Alexis's six-month-old baby. Ex. 17. Because of Smith's actions, the infant sustained an abrasion to her ear, a torn lip, bruises on her abdomen and face, multiple fractures to her legs, a bruised liver, and multiple lesions to the bottoms of her feet. Ex. 1-12, 20-21. Smith also inflicted these injuries in the presence of her own eighteen-month-old granddaughter, Alexis's oldest child. The helpless six-month-old suffered for almost thirty hours before Smith lied to Alexis and her family about what she had done to the baby.

As for Smith's character, she highlights her minimal contact with law enforcement, pointing out that her prior offenses were alcohol-related misdemeanors. Smith also expends considerable energy focusing on her own suffering and illnesses,

including major depression, fibromyalgia, a hysterectomy resulting in premature menopause, and diabetes. Smith is an adult and while she may suffer from these ailments, we cannot and will not agree that this makes her ten-year executed sentence inappropriate for acts that essentially entailed making a helpless six-month-old baby needlessly suffer over such an extended period of time.

In short, Smith was convicted of class B felony neglect of a dependent, two counts of class B felony battery, and three counts of class D felony battery, and her ten-year executed sentence was not inappropriate in light of the nature of these offenses and her character. Consequently, we decline her invitation to revise her sentence.

The judgment of the trial court is affirmed.

RILEY, J., and BARNES, J., concur.